600 S.E.2d 217

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**STEVEN H., Defendant Below, Appellant.**

**No. 31601.**

Supreme Court of Appeals of West Virginia.

Submitted: April 28, 2004.

Filed: June 17, 2004.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for the Appellee.

Jeffrey N. Weatherholt, Thompson & Weatherholt, P.L.L.C., Romney, for the Appellant.

PER CURIAM.

This is an appeal by Steven H.,[1] a juvenile status offender (hereinafter "Appellant"), from an order of the Circuit Court of Hardy County placing the Appellant in an out-of-home placement. On appeal, the Appellant

---

1. We follow our traditional practice in domestic and juvenile cases involving sensitive facts and do not use the last names of the parties. *See, e.g., State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 254 n. 1, 470 S.E.2d 205, 208 n. 1 (1996).

seeks release from such placement. Upon thorough review of the record, the arguments of counsel, and the applicable precedent, we find no reversible error and affirm the school placement accomplished by the order of the lower court.

I. Factual and Procedural History

On February 18, 2000, the Appellant's mother filed a status offender petition, alleging that the Appellant, then age twelve,[2] had begun behaving inappropriately in 1999 and that the Appellant's misbehavior had affected his school attendance.[3] On March 24, 2000, the Appellant admitted delinquency as a status offender. By agreement, the Appellant was placed on a one-year improvement period, pursuant to West Virginia Code § 49–5–9 (1998) (Repl.Vol.2001). The State filed a Petition to Revoke the Appellant's improvement period on May 11, 2000, based upon the Appellant's continued refusal to attend school regularly and maintain appropriate behavioral standards. The lower court reviewed the Appellant's progress with counseling and other services and noted that the Appellant had failed to cooperate in services provided through Cassidy White of Action Youth Care; Dawn G. Day, Youth Services Supervisor for the West Virginia Department of Health and Human Resources (hereinafter "DHHR"); and Ken Powers of the DHHR.

On September 14, 2000, the lower court ordered the Appellant to attend New Dominion School in Oldtown, Maryland. Such out-of-home placement was accomplished pursuant to the directives of West Virginia Code § 49–5–11a(b)(2) (1998) (Repl.Vol.2001).[4]

2. The Appellant was born on June 21, 1987. He is currently 16 years of age and will turn 17 in June 2004.

3. The Appellant's mother alleged in the petition that the Appellant was a status offender for the following reasons:

(a) He habitually and continuously refuses to respond to the lawful supervision of the Petitioner (mother) such that his behavior substantially endangers his health, safety and welfare.

(b) He leaves the residence of your Petitioner and stays out all night long.

(c) He leaves the residence of your Petitioner and does not come home until after midnight.

(d) On the night of December 31, 1999, he came home and had been drinking beer or alcoholic beverages and was believed to be under the influence of same.

(e) He has been suspended from the school bus and is a discipline problem at Moorefield Middle School and is not obeying the rules and regulations of the Moorefield Middle School.

(f) Your Petitioner has attempted counseling with the juvenile through the West Virginia Department of Health and Human Resources, Potomac Highlands Mental Health Guild and Eastern Psychological, with little, if any, effect as the juvenile's conduct keeps getting worse.

4. West Virginia Code § 49–5–11a, in its entirety, provides as follows:

(a) Services provided by the department for juveniles adjudicated as status offenders shall be consistent with the provisions of article five-b [§§ 49–5B–1 et seq.] of this chapter and shall be designed to develop skills and supports within families and to resolve problems related to the juveniles or conflicts within their families. Services may include, but are not limited to, referral of juveniles and parents, guardians or custodians and other family members to services for psychiatric or other medical care, or psychological, welfare, legal, educational or other social services, as appropriate to the needs of the juvenile and his or her family.

(b) If necessary, the department may petition the circuit court:

(1) For a valid court order, as defined in section four [§ 49–1–4], article one of this chapter, to enforce compliance with a service plan or to restrain actions that interfere with or defeat a service plan; or

(2) For a valid court order to place a juvenile out of home in a nonsecure or staff-secure setting, and/or to place a juvenile in custody of the department.

(c) In ordering any further disposition under this section, the court is not limited to the relief sought in the department's petition and shall make every effort to place juveniles in community-based facilities which are the least restrictive alternatives appropriate to the needs of the juvenile and the community.

(d) The disposition of the juvenile may not be affected by the fact that the juvenile demanded a trial by jury or made a plea of denial. Any order providing disposition other than mandatory referral to the department for services is subject to appeal to the supreme court of appeals.

(e) Following any further disposition by the court, the court shall inquire of the juvenile whether or not appeal is desired and the response shall be transcribed; a negative response may not be construed as a waiver. The evidence shall be transcribed as soon as practicable and made available to the juvenile or his or her counsel, if it is requested for purposes of further proceedings. A judge may grant a stay of execution pending further proceedings.

While at New Dominion, the Appellant complied with school rules, and status hearings conducted in December 2000, March 2001, and September 2001 indicated that the Appellant had earned good grades at New Dominion.

On May 29, 2002, at the conclusion of the educational period at New Dominion, the Appellant was returned home and attended a hearing before the lower court. Apparently based upon the suggestion of administrators at the New Dominion School, the lower court placed the Appellant on probation by order dated June 10, 2002, and specified that the Appellant would remain on probation until the age of twenty-one. The Appellant did not object to the probation order or appeal that order. On January 14, 2003, the Appellant tested positive for drugs and was suspended from school. The Appellant's probation officer requested revocation of probation, based upon the fact that the Appellant's drug usage and school expulsion violated the terms of the probation order.

During a February 5, 2003, hearing, the Appellant admitted that he had violated conditions of his probation by smoking marijuana and being expelled from school for fighting. By order dated February 21, 2003, the lower court revoked the Appellant's probation and ordered DHHR to locate appropriate placement for the Appellant. The DHHR arranged placement at Timber Ridge School in Winchester, Virginia. The lower court, finding that no equivalent facility existed in West Virginia, ordered the Appellant to be placed at Timber Ridge.

The Appellant appeals that determination of the lower court, contending that he should have been permitted to remain at home and receive home schooling by the county until the age of sixteen, at which time he planned to discontinue his public education. Specifically, the Appellant assigns error to the lower court's order placing him on probation after his release from New Dominion. The Appellant also assigns error to the lower court's alleged failure to make findings of fact, failure to accord the Appellant with the least restrictive alternative, and failure to

order psychiatric findings as part of an individualized treatment plan.

In response, the State maintains that the only issue raised by the Appellant below was that the lower court had failed to accord the Appellant with the least restrictive alternative. Further, the State emphasizes that any objection to the June 10, 2002, order placing the Appellant on probation should have been raised at that time and has been waived due to the failure to object and to appeal. Thus, the State argues that appeal of the probation issue is untimely and should not be considered by this Court.

It is also worthwhile to note that the Appellant has indicated the possibility that he may complete the Timber Ridge program by March 2004 or June 2004, so he "would like to have the option of waiving any of the requirements ... ordered by this Court, if such tests, or other documents cannot be conducted or completed at his current placement, and/or which may otherwise increase his time at his current placement or another facility."

## II. Standard of Review

The Appellant has raised matters of law concerning the validity of the lower court's placement decisions as premised upon statutory requirements. As issues of law, these matters are considered *de novo* during appellate review. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995); *accord State v. Paynter*, 206 W.Va. 521, 526, 526 S.E.2d 43, 48 (1999) ("To the extent that we are asked to interpret a statute or address a question of law, our review is *de novo.*") We have utilized a three-part standard of review when analyzing a trial court's rulings, as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a

clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

### III. Discussion

#### A. Sufficiency of Findings of Fact and Conclusions of Law

 This Court has consistently required trial courts to include specific findings of fact and conclusions of law warranting out-of-home placement of juveniles. In *State v. Damian R.*, 214 W.Va. 610, 591 S.E.2d 168 (2003),[5] this Court explained as follows in pertinent part of syllabus point two:

> [S]uch a petition [for out-of-home placement] may only be granted upon a showing by clear and convincing evidence that such a custody or placement order is actually necessary; that the effective provision of services cannot occur absent such an order; and that all reasonable efforts have been made to provide appropriate services without an out-of-home placement or custody transfer; and orders granting such placement and/or transfer must be based on specific findings and conclusions by the court with respect to the grounds for and necessity of the order.

In the case sub judice, through the order dated February 21, 2003, the lower court found that "equivalent facilities for the Juvenile are not available in the State of West Virginia, and the institutional care with the Timber Ridge School Facility in the State of Virginia is in the best interest of the Juvenile and will not produce undue hardship." In addition to those written findings, the record of the February 5, 2003, hearing indicates that additional discussion had occurred regarding the best interests of the Appellant. In analyzing the available alternatives for resolution of the matter, the lower court, the State, counsel for the Appellant, and the probation officer discussed the possibility that the Appellant might be permitted to remain in the custody of his mother and obtain home schooling. Mr. Stephen L.

Davis, as Chief Probation Officer, explained to the court as follows: "I would recommend placement, Your Honor. I mean, we've been dealing with Steven for approximately 2–1/2 years now... I don't believe he would be getting an education of home school that—— that he needs or deserves." With specific regard to the Timber Ridge location, the Appellant's counsel stated, "I think we could probably reach an agreement as to placement, Your Honor." Appellant's counsel thereafter noted his objection, as follows, "I don't believe this would be the least restrictive alternative. You know, again he is just a status offender and I believe that there could be—— the case should actually be dismissed or—— or with the Department for services." The court noted the objection and entered the February 21, 2003, order placing the Appellant at Timber Ridge.

Our review of the record and order discloses that the lower court provided sufficient findings of fact and conclusions of law to justify the determination that the Appellant's out-of-home placement order was, in the terminology of *Damian*, "actually necessary; that the effective provision of services cannot occur absent such an order; and that all reasonable efforts have been made to provide appropriate services without an out-of-home placement and/or custody transfer." 214 W.Va. at 617, 591 S.E.2d at 175. This Court has noted that "the court must set forth on the record findings of fact which support the conclusions required by the statute." *State ex rel. B.S. v. Hill*, 170 W.Va. 323, 326, 294 S.E.2d 126, 129 (1982), quoting *State ex rel. S.J.C. v. Fox*, 165 W.Va. 314, 317, 268 S.E.2d 56, 59. We find that such requirement has been satisfied. We further find that the *Damian* requirements have been met since the order in the case sub judice "granting such placement or transfer ... [was] based on specific findings and conclusions by the court with respect to the grounds for and necessity of the order." 214 W.Va. at 617, 591 S.E.2d at 175.

#### B. Least Restrictive Alternative

 With regard to the Appellant's argument that the lower court failed to choose the least restrictive alternative, West Virginia

---

5. We are cognizant of the fact that the lower court in this case was unable to benefit from the guidance provided by this Court in *Damian*, since that opinion had not yet been filed while the lower court was contemplating placement for the Appellant.

Code § 49–5–11a(2)(c) clearly requires the court to "make every effort to place juveniles in community-based facilities which are the least restrictive alternatives appropriate to the needs of the juvenile and the community." This Court recognized such principle in *Damian*, explaining that "we must emphasize that the entire statutory scheme for status offenders contemplates that removal from the home and/or transfer of custody from a parent be undertaken only when necessary and upon clear and convincing proof that no less restrictive alternative is feasible." 214 W.Va. at 616, 591 S.E.2d at 174. The *Damian* Court also clarified that "[t]he removal of a juvenile status offender or delinquent from his parent's custody is authorized 'only when the child's welfare or the safety and protection of the public cannot be adequately safeguarded without removal....' *W.Va.Code*, 49–1–1(a)(12)(b) [1999]." *Id.* at 616, 591 S.E.2d at 174.

The procedural history of this case illuminates the efforts undertaken by the lower court, the DHHR, and other entities to comply with the statutory mandates. The lower court first attempted a minimally invasive resolution, in the form of an improvement period with certain conditions. The Appellant proved that he was unable to comply with those conditions or benefit from the court's attempted resolution of the matter. The Appellant was thereafter placed at New Dominion, and he responded positively until his return home. Approximately six months after his return, he was expelled from school for fighting, and he also tested positive for drug use. The Appellant's behavior indicates that the less restrictive alternatives attempted by the lower court were unsuccessful and that out-of-home placement was the least restrictive alternative available to the lower court based upon the circumstances.

Thus, upon thorough review of this matter, we conclude that the record adequately demonstrates the necessity for transferring legal custody of the Appellant to the DHHR and removing him from his home. Under the circumstances presented to the lower court, its action did constitute the least restrictive alternative. Further, we find no reversible error in the failure of the lower court to order psychological testing in order to determine the appropriate placement for the Appellant. The information presented to the lower court provided a sufficient basis upon which the court could base a resolution. Further, it does not appear from the record that the Appellant requested additional evaluation prior to a final determination.

C. Probation Order of June 2002

■ With regard to the Appellant's contention that the lower court erred by placing him on probation upon his May 2002 return from New Dominion School, the State maintains that the Appellant waived his opportunity to raise that issue as error by failing to appeal the probation order in a timely fashion. The State suggests that because the Appellant failed to appeal that order, he has waived his right to raise it as an appellate issue in the case subjudice. *See Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 62, 475 S.E.2d 55, 62 (1996) (observing that "Appellant's failure to appeal the final judgment order entered by the circuit court brought finality to that judgment, thereby ending any controversy or adverseness between the parties"); Syl. Pt. 3, *State v. Asbury*, 187 W.Va. 87, 415 S.E.2d 891 (1992) (holding that "[f]ailure to make timely and proper objection ... constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court").

Based upon the clear failure of the Appellant to challenge the probation order through means of an appeal, we cannot consider any non-jurisdictional challenge to that order. *See Whitlow v. Board of Educ.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (acknowledging general rule that failure to raise non-jurisdictional issues below precludes appellate consideration). The Appellant does not specify any precise condition of probation to which he presently objects and appears to premise his assignment of error upon the general fact that the lower court placed him on probation after his success at New Dominion. Consequently, we find that the Appellant's current challenge to the lower court's decision to place the Appellant on probation has not been raised in a timely fashion. The order was entered in June 2002, and the Appellant did not appeal that order.

Based upon the foregoing, we find that the lower court's order placing the Appellant on probation after his tenure at the New Domin-

ion School was not appealed in a timely fashion, and the Appellant is not entitled to the relief he currently seeks on that issue. We further find that the lower court did not err in its findings of facts and conclusions of law; did not fail to accord the Appellant with the least restrictive alternative; and did not otherwise err in ordering the Appellant to Timber Ridge.[6] Based upon the assertions of the Appellant, his tenure at Timber Ridge was expected to conclude by March or June 2004; if such estimates were correct, school attendance issues are no longer problematic for the Appellant.

Affirmed.

**6.** Our review of the probation order reveals another issue which, although not raised by the Appellant and not dispositive of this case, is nevertheless deserving of brief comment. The probation order states that the Appellant was to remain on probation until the age of twenty-one. While this issue is technically moot since the probation is no longer in effect, due to the Appellant's drug and school expulsion violations, we note for future reference that the statutory principles appear to support a probation order which extends only until the age of eighteen for a juvenile *status offender*. The statutory schemes direct that juvenile *status offenders* must be distinguished from other juvenile offenders adjudicated *delinquent* by reason of the commission of an act which would be a crime if committed by an adult. Although West Virginia Code § 49–5–11a provides that a "court is not limited to the relief sought in the department's petition" in a status offender case, the age limitations applicable to status offenders must be recognized. West Virginia Code § 49–5–2(f) (2001) provides that "[i]f a juvenile *commits an act which would be a crime if committed by an adult,* and the juvenile is adjudicated delinquent for that act, the jurisdiction of the court which adjudged the juvenile delinquent continues until the juvenile becomes twenty-one years of age." Where the juvenile is simply a *status offender,* however, that age extension to twenty-one years does not apply, nor is there any other statutory provision allowing probation for such a status offender to extend to age twenty-one. *See* W. Va.Code § 49–1–2 (1997) (Repl.Vol.2001) (defining child and juvenile); W. Va.Code § 49–2–2 (1972) (Repl.Vol.2001) (addressing duration of custody); W. Va.Code § 49–5–1 (1998) (Repl.Vol.2001) (defining child). Consequently, future probation orders for juvenile status offenders, while otherwise acceptable and discretionary with the court, should extend only until the status offender attains the age of eighteen years.