629 S.E.2d 758

**Alice Gwen NUTTER, Plaintiff Below, Appellee**

v.

**Michael Wayne NUTTER, Defendant Below, Appellant.**

No. 32765.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 28, 2006.

Decided March 30, 2006.

---

Alice Gwen Nutter, for Pro Se.

Kimberly D. Bentley, Charleston, for the West Virginia Department of Health and Human Services, Bureau for Child Support Enforcement.

Michael Wayne Nutter, for Pro Se.

1. The Appellant's child support obligation to Justin Nutter terminated with Justin's high school graduation in May 2002.

2. As emphasized by the Bureau, it must be observed that the confusion in the Appellant's payments originated in the Appellant's own failure to make all payment of child support in a timely manner.

3. The record reflects that the Linda Wiblin account was finalized in February 2000 with a finding of the Wood County Circuit Court that

**PER CURIAM:**

This is an appeal by Michael W. Nutter (hereinafter "Appellant") from a decision of the Circuit Court of Jackson County regarding the Appellant's child support obligations. The order from which the Appellant appeals, entered April 24, 2004, held that the Appellant was entitled to a refund of $437.93 from the Bureau for Child Support Enforcement (hereinafter "Bureau"). The Appellant contends that the lower court's prior June 30, 2003, finding of negligent handling of accounts on the part of the Bureau should have resulted in a monetary damages award for personal stress and wage losses for the Appellant and his current wife. Upon thorough review of the briefs, arguments, record, and applicable precedent, this Court affirms the lower court's April 24, 2004, order.

## I. Factual and Procedural History

On April 10, 1987, the Appellant and Alice Gwen Nutter were granted a divorce, and custody of their son Justin [1] was granted to Mrs. Nutter. In addition to the child support owed in the Alice Nutter case, the Appellant also owed child support to a previous wife, Linda Nutter Wiblin. The record reflects that the Appellant failed to pay the required child support in both the Wiblin and Nutter accounts and accumulated a child support arrearage.[2] The Bureau was apparently inefficient in maintaining records recording which monetary amounts ultimately paid by the Appellant should be attributed to each of the two child support obligation accounts.[3] A February 6, 2003, audit[4] definitively concluded that the Appellant owed $1,775.89 in child support to Alice Nutter, plus $1,372.02 in interest on the underpayment through January 19, 2003. The post January 19,

the Appellant was entitled to a refund from the Bureau for overpayments in the Linda Wiblin account. At that time, despite the fact that an arrearage existed in the Alice Nutter account, the Appellant was reimbursed for his overpayments in the Wiblin account.

4. The audit was performed by the independent accounting firm of McDonough, Eddy, Parsons & Baylous. The audit was based upon the income withholding orders submitted to the Appellant's sources of income by the Bureau.

2003, financial situation was to be determined at a later date.

By order entered June 30, 2003, the lower court approved the findings of the February 6, 2003, audit and specifically declared that the Bureau had been negligent in misapplying payments between the Nutter account and the Wiblin account.[5] The credit for payments made by the Appellant subsequent to January 19, 2003, the date of the last calculations included in the audit, was to be determined after the June 30, 2003, order. Neither party appealed the June 30, 2003, order.

It is from an April 24, 2004, lower court order that the Appellant currently appeals. That order held that based upon the payments received from the Appellant subsequent to January 19, 2003, the Appellant was entitled to a refund of $437.93 from the Bureau. The Bureau has affirmed that such amount has been paid to the Appellant. The April 24, 2004, order also denied the Appellant's request for attorney fees.

On August 25, 2004, the Appellant filed an appeal of the April 24, 2004, order to this Court. The Appellant contends that the lower court's June 30, 2003, finding of negligence on the part of the Bureau should have warranted monetary damages to be paid by the Bureau to the Appellant. He explains that freezes were wrongly placed on his checking and savings accounts; income tax refunds were unfairly intercepted; and employment time was lost due to the difficulties created by the Bureau's inefficiency. By letter to this Court dated August 10, 2005, the Appellant, acting pro se, requested damages in the amount of $1,173,500.00. By letter dated September 12, 2005, the Appellant asserted his desire to file a civil action against the Bureau, seeking $1,173,500.00 in damages.

In response to the Appellant's petition for appeal, the Bureau filed a cross assignment of error asserting that this case should be dismissed since the June 30, 2003, finding of negligence was never appealed. However, the Bureau further asserts that if this Court does act on this matter, the Bureau seeks a

remand for recalculation of the amount owed to Mr. Nutter. The Bureau contends that the audit erroneously based its calculations upon "notices to income withhold" rather than upon the actual court-ordered child support orders. The Bureau argues that the actual child support obligations are more accurately reflected in the court orders, rather than the income withholding notices used by the auditors.

## II. Standard of Review

 In considering the appeal of a circuit court's order, this Court employs a two-pronged deferential standard:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Syl. Pt. 1, *McCormick v. Allstate Insurance Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996). This Court is also guided by our consistently stated rule that "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III. Discussion

The posture in which this case is presented must be addressed at the outset of this evaluation. The June 30, 2003, finding of negligence on the part of the Bureau was not appealed by either party. Thus, the only matters properly before this Court on appeal are those contained in the April 24, 2004, order. That properly appealed order set forth the reimbursement amount owed to the Appellant as $437.93 and declined to extend attorney's fees to the Appellant. The Appellant now seeks damages in the amount of

---

**5.** The June 30, 2003, order specifically stated as follows: "The Court finds that the Bureau of Child Support Enforcement was negligent in misapplying payments between the Wiblin and Nutter accounts."

$1,173,500.00, apparently based upon the prior finding of negligence that was not appealed.

■ This Court has no jurisdiction to award damages to the Appellant based upon the lower court's prior order finding negligence in the Bureau's record keeping. First, the order regarding the negligence of the Bureau was not appealed,[6] and second, this Court, as an appellate court, has no authority to provide a litigant with a damages award where the lower court did not address the issue of damages. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 150 n. 27, 506 S.E.2d 578, 593 n. 27 (1998) (" 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' " (citation omitted)); Syl. Pt. 2, *Trent v. Cook*, 198 W.Va. 601, 607, 482 S.E.2d 218, 224 (1996) (" '[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' " (citations omitted)); Syl. Pt. 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) ("As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.").

■ With respect to the lower court's order denying attorney's fees to the Appellant, our review clearly demonstrates that the lower court was correct. West Virginia Code § 48–18–108(d) (Supp.2005) explicitly provides that "[n]o court may order the Bureau for Child Support Enforcement to pay attorney's fees to any party in any action brought pursuant to this chapter." [7] We consequently affirm the lower court's order denying the Appellant attorney's fees.

■ The Bureau filed a cross-assignment of error regarding the alleged error in the audit utilized to calculate the refund owed to the Appellant. Upon review, this Court concludes that because the Bureau did not appeal the June 30, 2003, lower court approval of the audit, this Court has no jurisdiction to entertain arguments regarding the methodology utilized in the audit procedures. We therefore decline to address the matters raised in the Bureau's cross-assignment of error.

As a final matter to be recognized, it appears from the record that the Appellant sought relief in an action seeking insurance benefits through the Bureau's insurer, AIG Claim Services, Inc., Property/Casualty Claim Division.[8] The Appellant's action was

---

6. *See* W. Va.Code § 58–5–4 (1998) (Repl.Vol. 2005).

7. Prior to the promulgation of that statute, this Court had also ruled that no statutory authority existed for the granting of attorney fees against the predecessor to the Bureau, the Child Advocate Office. In *State ex rel. Division of Human Services v. Benjamin P.B.*, 190 W.Va. 81, 436 S.E.2d 627 (1993), this Court found that attorney fees could not properly be assessed against the Child Advocate Office because no statutory authority existed which would permit the recovery of attorney fees in that paternity action and because the Bureau's actions were not per se oppressive for purposes of awarding attorney fees. 190 W.Va. at 84, 436 S.E.2d at 630.

8. This Court previously explained in *Parkulo v. West Virginia Board of Probation*, 199 W.Va. 161, 483 S.E.2d 507 (1996), that the State Board of Risk and Insurance Management is authorized to purchase insurance providing coverage of all State "property, activities and responsibilities."

199 W.Va. at 168, 483 S.E.2d at 514. In syllabus point two of *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), this Court held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." This Court also recognized as follows in syllabus point one of *Eggleston v. West Virginia Department of Highways*, 189 W.Va. 230, 429 S.E.2d 636 (1993), this Court held as follows:

W.Va.Code, 29–12–5(a) (1986), provides an exception for the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy "shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits."

not initially successful, and the record is unclear regarding the current posture of that insurance claim.[9]

Having reviewed the matters asserted by the Appellant in this appeal, this Court finds that the lower court's order of April 24, 2004, should be affirmed in its entirety.

Affirmed.

9. The record before this Court relates directly to the Appellant's divorce and child support issues and does not contain detailed information regarding the Appellant's claim for insurance proceeds. It does, however, contain a letter from AIG Claim Services, Inc., insurer for the Bureau, dated August 12, 2004. That letter advises the Appellant that the documentation reviewed by AIG "did not bring to light any additional facts that would cause us to be able to change our position on this claim." The record does not contain any information regarding subsequent action by the Appellant or AIG on this claim.