# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

In Re: R.T.

No. 13-0788 (Wirt County 12-JS-12)

**FILED**

March 7, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner R.T., a juvenile, by counsel George M. Torres, filed this appeal from an order of the Circuit Court of Wirt County entered on July 15, 2013. The State of West Virginia, by counsel Laura Young, filed a response in support of the circuit court's order. Petitioner appeals the order of the circuit court continuing her placement in the custody of the West Virginia Department of Health and Human Resources ("Department") and placing her in a residential facility.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was born on June 16, 1997. She was adjudicated as a juvenile status offender on May 11, 2012, upon admitting the allegations set forth in a truancy petition that she was habitually absent from school without good cause.[1] *See* West Virginia Code § 49-1-4. More specifically, during the 2011-12 school year and as of March 14, 2012, petitioner had forty-four absences from Wirt County High School, of which sixteen absences were unexcused.[2] A status offense supervision agreement was also executed on May 11, 2012, in which petitioner agreed, among other things, to "attend and remain in school at all times when school is in session and not be absent therefrom except for unavoidable causes of absence which are specifically authorized by [her] youth services worker." Other conditions intended to modify petitioner's behavior were included in the agreement.

---

[1]An adjudicatory hearing was conducted on May 11, 2012.

[2]According to a subsequent status report dated June 18, 2013, petitioner has a very long history of truancy: She was absent twenty-nine instructional days in kindergarten; twenty-one instructional days in the first grade; twenty-nine instructional days in the second grade; more than twenty-nine instructional days in the third grade; more than thirty-two instructional days in the fifth grade; thirty-eight instructional days in the sixth grade; thirty-nine instructional days in the seventh grade; more than forty-six instructional days in the eighth grade; and fifty-six instructional days in the ninth grade. No attendance records appear to exist for the fourth grade.

1

A status hearing was subsequently conducted on December 6, 2012, and in an order entered that same day, the circuit court ordered, *inter alia*, that petitioner "and her parents need to cooperate with the [Department] to address the truancy issue."[3]

A report completed by the Department dated January 3, 2013, revealed that in December of 2012, petitioner missed thirteen days of school, "including 9 days after the Status Review Hearing was held on [December 6, 2012]. Upon return from the semester break, [petitioner] missed [January 2, 2013,] and arrived at approximately noon on [January 3, 2013]. All of these absences were unexcused." A status report completed by petitioner's probation officer dated January 7, 2013, indicated that in March 2012 petitioner received in-patient treatment for "anxiety, school refusal and depression." She was also treated on an out-patient basis for "depression, anxiety, parent-child relational problems, Attention Deficit Hyperactivity Disorder (ADHD) and [e]arly features of Oppositional Defiant Disorder." Furthermore, "[s]tressors were identified as moderate due to stress between divorced parents." Petitioner's probation officer also noted that there has been no improvement in petitioner's school attendance and that

> [h]er truancy continues. . . . It appears that [petitioner's] mental health problems continue to interfere with her ability to obtain an education. I would . . . recommend [petitioner] be placed in a residential treatment facility where her mental health problems can be stabilized and she can obtain her education. Her current lack of attendance will in turn cause her to fall further behind in school and increase her chances of quitting school prior to obtaining her diploma.

Following a status hearing on January 8, 2013, and by order entered February 6, 2013, the circuit court concluded that given the on-going truancy problems, "continuation in the home is not in the best interests of the child[;]" that the Department "has made reasonable efforts to avoid a placement outside of the child's home[;]" and that temporary legal and physical custody of petitioner again be placed in the Department. Petitioner was placed at the Gustke Shelter (a non-secured facility) and enrolled at Parkersburg High School. During her placement at the Gustke Shelter, petitioner had no unexcused absences and was excused for two partial days for medical appointments. She did not have any behavior problems while in the Department's custody.

Following a status hearing on February 12, 2013, petitioner was returned to the custody of her parents. The record indicates that petitioner's parents are divorced; that petitioner resided with them on an "alternating basis[;]" that the parents' relationship with each other is "antagonistic[;]" that petitioner resists efforts by both parents to get her to attend school; and has manipulated them "against each other so they are unable to present a unified front when dealing with [petitioner's] truancy issues." While in her parents' custody, petitioner had three excused absences for whole days for medical appointments; had doctor's excuses for seven absences; submitted parent notes for five absences; and had unexcused absences for five whole days and seven partial days.

---

[3]The circuit court's order further permitted petitioner's then counsel to withdraw and appointed present counsel to represent petitioner in all further proceedings in this matter.

By order entered May 29, 2013, following a May 14, 2013, hearing, the circuit court concluded that "continuation in the home is contrary to the best interests of [petitioner]" and ordered that petitioner be placed in the legal custody of the DHHR, returned to the Gustke Shelter, and "[t]hereafter, future placement at a facility such as the West Virginia Children's Home in Elkins, West Virginia." Upon returning to the Gustke Shelter on May 14, 2013, petitioner had only one excused absence.

A report completed by Wirt County Child Protective Services ("CPS") worker Michael W. Seebaugh dated June 19, 2013, indicated that he and another CPS worker conducted a home visit at the residence of petitioner's maternal aunt and uncle, Kimberly and William C., at the request of petitioner's counsel. Petitioner's proposed placement plan was and is placement with her aunt and uncle. Mr. Seebaugh reported that that placement presented no safety concerns and that "Mr. [C.] presented as an appropriate candidate for a relative caretaking arrangement. . . . Upon inquiry, Mr. [C.] indicated they would be willing to provide a residence for [petitioner] as long as she was willing to live by their rules."

The June 19, 2013, report indicated further that, according to her final attendance records for the 2012-13 school year, petitioner

> missed 88 days in a 180-day instructional calendar, or approximately 49% of available instructional days. . . . Given [petitioner's] attendance pattern this year, it is nothing short of a miracle she was able to pass all her classes except one . . . . However, it should be noted that [petitioner] is certainly capable of competing for A's and B's rather than merely scraping by.

The report also acknowledged that "[i]n all fairness to [petitioner], there are obvious and well-documented tensions in her family that have certainly affected her attitude and facilitated the manipulation of her parents she admitted to recently at the shelter. . . . [petitioner] performed well below her capabilities. . . ." In addition to opining that petitioner "could benefit from a stay at the West Virginia Children's Home to assist her in conquering the school avoidance behaviors" and to give her "access to frequent supportive counseling and therapy sessions[,]" Mr. Seebaugh's report noted that petitioner "does not exhibit any of the other behaviors that typically land a teenager in a residential placement facility. [Petitioner] does not use or abuse drugs, has not committed crimes against property or persons, and has been a model resident at the Gustke Shelter." With regard to the possibility of petitioner residing with Mr. and Mrs. C., the report indicated that there are no "legal concerns or substantiated maltreatment findings, and there were no safety issues in the home to preclude [petitioner] living there. . . . [Mr. and Mrs. C.] appear to be an appropriate alternative and are willing to get involved with this youth." Notwithstanding Mr. Seebaugh's opinion in this regard, his ultimate recommendation was to place petitioner at the West Virginia Children's Home in Elkins, advising that she is "in need of residential placement with strong therapy and school components. [She] will also receive weekly counseling on-site, and therapy . . . . Upon discharge, [petitioner] could be placed with the [C.] family if necessary to complete her academic career." Petitioner's probation officer also recommended that "the least restrictive alternative given the education history, tension in the

3

family and family history[4] is placement in a residential treatment program . . . such as the WV Children's Home in Elkins WV." (Footnote added)

Following a June 24, 2013, hearing and by order entered July 15, 2013, the circuit court found that the Department had made reasonable efforts to avoid placement outside the home but that the return of petitioner to the home is not in her best interest and contrary to her welfare; that petitioner's "school attendance and performance has been very poor while in the custody of the parents[;]" that petitioner "has the ability to do very well in school if she is present to learn[;]" and "[t]hat no less restrictive alternatives exist to placing the child outside of the home." The circuit court further found that custody of petitioner should continue in the Department and that she "shall be placed in a residential facility similar to the West Virginia Children's Home in Elkins, West Virginia." It was further ordered that the permanency plan is reunification with her parents. It is from this order that petitioner now appeals.

The sole issue raised in this appeal is whether the circuit court erred by finding that clear and convincing evidence existed to place petitioner in an "out of home" facility when a viable "family oriented/community-based placement" existed as a less restrictive alternative. More specifically, petitioner argues that the record clearly demonstrates that her sole offense is truancy and that she has not engaged in any dangerous, ungovernable or immoral conduct that has placed either her or others in harms way. Petitioner contends that, given this Court's past declaration that status offenders should not be placed outside of the home with juveniles who have engaged in "criminal conduct" unless the status offender herself has engaged in behavior that is "self destructive" and dangerous to the well-being of the child and/or others, she should have been placed with her maternal aunt and uncle instead of in a residential treatment facility. *See generally State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977).

Petitioner's assignment of error regarding the circuit court's order implicates the following standard of review:

> "'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 2, *Nutter v. Nutter*, 218 W.Va. 699, 629 S.E.2d 758 (2006).

Syl. Pt. 3, *In re Brandi B.*, 231 W.Va. 71, 743 S.E.2d 882 (2013). Furthermore,

> "'[A] petition seeking an order regarding transferring custody of the status offender to the Department and/or out-of-home placement under *W.Va. Code*, 49-511a(b)(2) [1998] . . . may only be granted upon a showing by clear and convincing evidence that such a custody or placement order is actually necessary;

---

[4]The report by petitioner's probation officer specifically referenced the tension between petitioner's family members, noting that "[t]his tension[,] which has been observed in every Court hearing and two out of three [multidisciplinary team] meetings[,] is likely to have a negative effect on [petitioner]."

4

that the effective provision of services cannot occur absent such an order; and that all reasonable efforts have been made to provide appropriate services without an out-of-home placement or custody transfer; and orders granting such placement and/or transfer must be based on specific findings and conclusions by the court with respect to the grounds for and necessity of the order.' Syl. Pt. 2, in part, *State v. Damian R.*, 214 W.Va. 610, 591 S.E.2d 168 (2003)."

*In re Brandi B.*, 231 W.Va. at 76, 743 S.E.2d at 886, syl. pt. 9.

We find that the circuit court did not abuse its discretion in ordering petitioner to be placed in the West Virginia Children's Home rather than with her aunt and uncle. The record clearly demonstrates that petitioner's long and extreme history of truancy began at a very early age and continued for many years even though she and her parents received services while she was living in a community setting. As a result, her grades suffered dramatically and petitioner performed well below her capabilities. It was not until she was finally placed at the Gustke Shelter that she attended school regularly while also receiving treatment for her mental health issues. This Court concludes that the circuit court did not abuse its discretion in finding the West Virginia Children's Home to be the least restrictive alternative given both the well-documented failure of community placement in addressing her truancy and the success she had while living in a residential facility.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 7, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Margaret L. Workman

5